UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re Application of<br><br>FOURWORLD EVENT OPPORTUNITIES, LP,<br><br>Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. 22-mc- 91431-RGS |

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S
## APPLICATION FOR AN *EX PARTE* ORDER PURSUANT TO 28 U.S.C. § 1782

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ....................................................................................................2

    I.    History of the Ahlstrom-Munksjö enterprise. ...........................................2

    II.    Bain and other Consortium members effectuate a squeeze-out of the Company's minority shareholders..................................................................3

    III.    The Consortium seeks to increase its shareholders through an exchange offer presented by the Ahlstrom family.................................................4

    IV.    The Tender Offer period is extended while the Consortium consolidates its holdings to guarantee its success. ..................................................5

    V.    The Offeror commences the A-M Redemption Arbitration. ....................6

    VI.    The Award in the A-M Redemption Arbitration adopts many of FourWorld's arguments in support of a higher share price due to "special reasons." .................8

    VII.    The parties file appeals from the Award to be heard by the Helsinki District Court. ........................................................................10

ARGUMENT.......................................................................................................11

    I.    This Section 1782 application meets the statutory requirements............11

        A.    Respondent is found in this district............................................11

        B.    The discovery sought is intended for use in a foreign proceeding. ...........13

        C.    Petitioner is an interested person in the foreign proceeding.......14

    II.    The discretionary *Intel* factors favor granting Petitioner's application. ................14

        A.    The discovery is sought from a non-party to the A-M Redemption District Court Proceeding. ......................................................15

        B.    Respondent has no reason to believe that Finnish courts are unreceptive to Section 1782 discovery.............................................16

        C.    Petitioner is not circumventing foreign restrictions....................17

        D.    The Subpoena is narrowly tailored. ..........................................18

III.    *Ex parte* relief is appropriate....................................................................................20

CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Addamax Corp. v. Open Software Found., Inc.*,
148 F.R.D. 462 (D. Mass. 1993) ............................................................. 13

*In re Application of Hill*,
2007 WL 1226141 (S.D.N.Y. Apr. 23, 2007) ........................................ 18

*In re Application of Masters for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*,
315 F. Supp. 3d 269 (D.D.C 2018) ......................................................... 20

*In re Appl. Pursuant to 28 U.S.C. § 1782*,
249 F.R.D. 96 (S.D.N.Y. 2008) .............................................................. 16

*In re Application of Republic of Ecuador v. Douglas*,
153 F. Supp. 3d 484 (D. Mass. 2015) .......................................... 11, 15, 16

*In re Chevron Corp.*,
633 F.3d 153 (3d Cir. 2011) .................................................................... 17

*In re Hornbeam Corp.*,
2018 WL 416486 (2d Cir. Jan. 16, 2018) .............................................. 20

*Chevron Corp. v. Shefftz*,
754 F. Supp. 2d 254 (D. Mass. 2010) ..................................................... 18

*In re del Valle Ruiz*,
939 F.3d 520 (2d Cir. 2019) .................................................................... 12

*Euromepa, S.A. v. R. Esmerian, Inc.*,
154 F.3d 24 (2d Cir. 1998) ................................................................ 14, 20

*In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation Pour le Traitement du Mais*,
2013 WL 6164435 (E.D. Pa. Nov. 22, 2013) .................................... 16, 17

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*,
27 F.4th 136 (2d Cir. 2022) .................................................................... 19

*Fernandes v. Bouley*,
2022 WL 2915702 (D. Mass. July 25, 2022) ......................................... 13

*Gushlak v. Gushlak*,
    486 F. App'x 215 (2d Cir. 2012) ................................................................................20

*Haseotes v. Abacab Int'l Computers, Inc.*,
    120 F.R.D. 12 (D. Mass. 1988) ................................................................................13

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
    633 F.3d 591 (7th Cir. 2011) ...................................................................................16

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)..........................................................................................*passim*

*Kulzer v. Esschem, Inc.*,
    390 F. App'x 88 (3d Cir. 2010) ...............................................................................15

*Minis v. Thomson*,
    2014 WL 1599947 (D. Mass. Apr. 18, 2014) ..............................................12, 19, 20

*In re O'Keeffe*,
    646 F. App'x 263 (3d Cir. 2016) .............................................................................17

*In re Pilatus Bank PLC*,
    2021 WL 1890752 (D.N.H. May 11, 2021)...............................................................14

*In re Application of Polygon Glob. Partners LLP*,
    2021 WL 1894733 (D.R.I. May 11, 2021) ................................................12, 13, 14, 15

*In re Porsche Automobil Holding SE*,
    2019 WL 5806913 (D. Mass. Nov. 6, 2019) ...............................................17, 18, 20

*In re Porsche Automobil Holding SE*,
    2020 WL 813710 (D. Mass. Feb. 19, 2020) .............................................................17

*In re Porsche Automobil Holding SE*,
    985 F.3d 115 (1st Cir. 2021)................................................................11, 15, 16, 17

*Rosie D. v. Romney*,
    256 F. Supp. 2d 115 (D. Mass. 2003) ......................................................................13

*Sandra Holding Ltd. v. Al Saleh*,
    2019 WL 3072197 (D. Mass. July 15, 2019)...........................................................*passim*

*In re Schlich*,
    2016 WL 7209565 (D. Mass. Dec. 9, 2016)..............................................................18

*In re Schlich*,
    893 F.3d 40 (1st Cir. 2018)...........................................................................14, 15, 17

iv

*Sauren Fonds-Select SICAV v. For Discovery Pursuant to 25 U.S. § 1782*,
2016 WL 6304438 (D.N.J. Oct. 26, 2016)...................................................................14

*Sergeeva v. Tripleton Int'l Ltd.*,
834 F.3d 1194 (11th Cir. 2016) ...............................................................................12

*In re Stati*,
2018 WL 474999 (D. Mass. Jan. 18, 2018).............................................................14

*In re Tovmasyan*,
557 F. Supp. 3d 348 (D.P.R. 2021).............................................................12, 17, 18

*In re Valitus, Ltd.*,
2020 WL 6395591 (D. Mass. Nov. 2, 2020) ......................................11, 12, 15, 20

## PRELIMINARY STATEMENT

Petitioner FourWorld Event Opportunities, LP ("Petitioner" or "FourWorld") respectfully petitions this Court for an *ex parte* order, under 28 U.S.C. § 1782 ("Section 1782"), authorizing discovery from Bain Capital Holdings (GP), LLC ("BCH" or "Respondent") for use in a proceeding pending before the District Court of Helsinki in Finland (the "A-M Redemption District Court Proceeding"). In that proceeding, minority shareholders (including Petitioner) are participating in an appeal—during which new evidence can be introduced—from an award issued by an arbitral tribunal (required under Finnish law) regarding the "fair price" of their shares in a multi-billion dollar, publicly traded company whose shares were redeemed and delisted through a tender offer (also referred to as a "squeeze out"). Bain Capital led a consortium, which included the founders of the company, that was the impetus behind the tender offer, promising it was "well-positioned" to "transform[] . . . the Company due to Bain Capital's considerable experience in the industry and distinctive approach to investments." Exhibit 1 to the Declaration of Risto Ojantakanen sworn to August 29, 2022 ("Ojantakanen Decl.") ("Tender Offer Document") at 1.

The arbitral tribunal found that the process leading to the tender offer was unfair such that "special reasons" (as defined under relevant Finnish law) justified increasing the redemption price offered under the tender offer's terms. These special reasons included: (i) the fact that a contemporaneous exchange offer provided favorable terms to the founders of the company and others, which were not offered to all shareholders and which chilled competing bidders; and (ii) a last-minute expansion of the agenda for the company's meeting of shareholders put pressure on them to approve the tender offer instead. And in the days after the requisite number of shareholders approved of the tender offer, the company released unexpectedly positive financial results.

Ultimately, in April 2022, the arbitral tribunal determined that the fair price of the company's shares was EUR 21.55, instead of the EUR 17.84 per share price provided for in the

tender offer. This finding was flawed for a number of reasons, and through the A-M Redemption District Court Proceeding, Petitioner asks the District Court to rule that EUR 24.49 is the appropriate fair price. In order to provide the judges that will decide the A-M Redemption District Court Proceeding with all relevant evidence, Petitioner seeks this Court's relief for an order pursuant to Section 1782 to obtain certain discovery from Respondent.

Section 1782 permits this Court to authorize an "interested person" (such as Petitioner) in a foreign proceeding (such as the A-M Redemption District Court Proceeding) to serve discovery on a person found in this District (such as Respondent). Once those statutory requirements are satisfied, as they are here, this Court can consider the discretionary factors set forth by the Supreme Court in *Intel* to determine if the application is otherwise impermissible. None of those discretionary factors support denial of Petitioner's application. As the parent of a leader of the transaction, BCH has material evidence regarding the tender offer that is relevant to Petitioner's continued pursuit of the fair value of the shares it held in the company. Accordingly, this Court should grant the application and authorize Petitioner to serve the proposed subpoena. Exhibit 1 to the Declaration of Kyle J. Kolb sworn to August 29, 2022 ("Kolb Decl.").

## BACKGROUND

### I.  History of the Ahlstrom-Munksjö enterprise.

Ahlstrom-Munksjö Oyj (the "Company" or "Ahlstrom-Munksjö") is a public limited liability company incorporated under the laws of Finland, whose shares were traded on Nasdaq Helsinki Ltd and Nasdaq Stockholm AB. Tender Offer Document at 1. The Company was founded in the 1800s by the Alhstrom family and grew into a global leader of manufacturing fiber-based materials for use throughout industries and consumer-driven products. *See id.* at 1, 23. Its 2019 revenue across its portfolio companies was approximately EUR 5 billion, and it employed approximately 15,500 people worldwide. *Id.* at 1.

2

The Ahlstrom industrial family maintained its ownership interests in the Company primarily through Ahlstrom-Invest B.V. ("AIBV," which is referred to as "Ahlstrom Capital" in the Tender Offer Document). AIBV was an indirectly owned subsidiary of Ahlstrom Capital Oy, which is an investment fund owned by the Ahlstrom family. *Id.* Through these vehicles, the Ahlstrom family maintained an approximate 36% ownership interest in the Company prior to the transaction at issue.

## II.    Bain and other Consortium members effectuate a squeeze-out of the Company's minority shareholders.

On September 24, 2020, the Company announced that it had entered into a combination agreement with Spa Holdings 3 Oy (n/k/a Ahlstrom-Munksjö Holding 3 Oy) (the "Offeror") pursuant to which the Offeror had made a voluntary public cash tender offer to acquire all of the issued and outstanding shares in the Company not held by the Company or its subsidiaries (the "Tender Offer"), at a price of EUR 18.10 per share. Tender Offer Document at 2, 6, 14; Kolb Decl. Ex. 2.

The Offeror was a company created within the Bain Capital structure. Specifically, it is indirectly-wholly owned by Spa Lux Topco S.à r.l., which is wholly-owned by Spa (BC) Lux Holdco S.à r.l., which itself is owned and controlled by funds managed or advised by Bain Capital Private Equity (Europe), LLP (collectively "Bain Capital"). Kolb Decl. Ex. 2. Bain Capital is "one of the most successful and active private equity firms in the world" with experience in investments in the Nordic region. Tender Offer Document at 1.

The takeover bid was made by a consortium (the "Consortium") of Ahlstrom-Munksjö's major shareholders and Bain Capital (through those affiliates), which was not previously a shareholder. The pre-existing Company shareholders in the Consortium were AIBV, Viknum AB ("Viknum"), and Belgrano Inversiones Oy ("Belgrano"). *Id.* at 14. AIBV, as noted previously, was

3

the primary vehicle through which the members of the Ahlstrom family held and maintained their ownership interests in the Company. Together, AIBV, Viknum, and Belgrano held approximately 31.42% of the shares and votes in the Company as of the start of the Tender Offer period. *Id.* at 2. An additional 4.16% of the shares and votes in the Company were held by pension funds that had irrevocably agreed to accept the Tender Offer. *Id.*

Through the Tender Offer, the Consortium would retain ownership interests in the to-be-private Company (unlike all other shareholders), and would have full control of the Company. As a result of the Tender Offer, Bain Capital would become the majority shareholder with 55% of the shares, AIBV would hold 36% of the shares, and Viknum would 9% of the shares. *Id.* at 1.

On October 21, 2020, the Offeror published a tender offer document, a copy of which is annexed to the Ojantakanen Declaration as **Exhibit 1**.[1] The Tender Offer period began on October 22, 2020. Tender Offer Document at 14.

### III.    The Consortium seeks to increase its shareholders through an exchange offer presented by the Ahlstrom family.

On November 4, 2020, AIBV also offered, in parallel to the Tender Offer, an exchange offer to the shareholders of AIBV's parent company, Ahlstrom Capital Oy, pursuant to which such shareholders could exchange their shares in the Company for shares in AIBV. Ojantakanen Decl. Ex. 3 ("Statement of Defence") § 4.3.1(iv); *see* Ojantakanen Decl. Ex. 2. Approximately 96% of Ahlstrom Capital Oy's shareholders accepted the exchange offer. Ojantakanen Decl. Ex. 5 (partial translation) (the "Award") at 201. This exchange offer was not offered to all the Company's shareholders, but only to those shareholders who also were shareholders of Ahlstrom Capital Oy (*i.e.*, members of the Ahlstrom industrial family). Statement of Defence § 4.3.1(v).

---

[1] Additional supplemental Tender Offer documents were released by the Company on October 28, 2020, December 11, 2021, and December 18, 2020, but only the December 18, 2020 supplement is included with these submissions.

IV.    **The Tender Offer period is extended while the Consortium consolidates its holdings to guarantee its success.**

Pursuant to the terms of the Tender Offer, more than 90% of the Company's shares needed to approve the Tender Offer. Ojantakanen Decl. ¶ 13; Tender Offer Document, Annex C at C-3. This so-called 90% condition is a standard condition for closing in Finnish public tender offers because when it is met, the offeror is entitled to de-list the company and to commence squeeze out proceedings to redeem the remaining shares at the "fair price." Tender Offer Document at 15. The terms of the Ahlstrom Tender Offer did not include any material protections for minority shareholders, including a "majority of the minority" provision. *See id.* at 10-11.

At the end of the Tender Offer period on January 14, 2021, the Consortium held 68.18% of all the Company's issued and 68.57% of all the Company's outstanding shares. Ojantakanen Decl. ¶ 15. Despite this, the Tender Offer had not yet been accepted by the requisite 90% of the Company's shareholders, with only 81.0% of the Company's shares being tendered. *Id.*; *see* Kolb Decl. Ex. 4.

Accordingly, the Company announced on January 20, 2021 that the offer period for the Tender Offer would be extended to February 4, 2021. Kolb Decl. Ex. 4; Statement of Defence § 4.3.1(x).

On January 25, 2021, the Company published an invitation to an Extraordinary General Meeting of shareholders to be held on February 19, 2021. Award at 187; Statement of Defence § 4.3.1(xii). The Company announced that the agenda for that meeting would include tentative proposals to: (i) authorize the Company's board of directors to issue up to 100% in additional shares of, up from 10%, which would double the number of the Company's outstanding shares if exercised, Ojantakanen Decl. ¶ 17, and (ii) change the Company's domicile to another country,

5

Award at 187; Statement of Defence § 4.3.1(xii). These agenda items raised a specter that the shareholders would be diluted and inserted uncertainty into the future of the Company.

At the end of the extended Tender Offer period on February 4, 2021, approximately 9.6% additional shares had been tendered, leaving the Offeror owning approximately 90.6% of the Company's shares. Award at 187; Statement of Defence § 4.3.1(xiii).

On February 9, 2021, the Company announced the final results of the Tender Offer, pursuant to which approximately 90.6% of the Company's shares and voting rights were validly tendered and accepted. Kolb Decl. Ex. 5.

On February 10, 2021, one day after the Tender Offer period had expired, the Company published its Financial Statements Release, which reflected a significant increase in EBITDA results. Ojantakanen Decl. ¶ 20; Statement of Defence § 4.8.15(i); *see also* Award at 216 (referencing the Q1/2021 Interim Report from the Company). The Company's shareholders voted without the benefit of knowledge of this improving financial performance.

**V.    The Offeror commences the A-M Redemption Arbitration.**

Under Finnish law, following a statutory "squeeze-out" of their shares (often described as a "take private" merger in other jurisdictions), the Company's shareholders are entitled to have the fair price of their shares determined following the transaction. Ojantakanen Decl. ¶ 13. The right to the squeeze-out and the fair price is determined in a statutory arbitration proceeding that is required under Chapter 18 of the Finnish Companies Act (the "Companies Act"). *Id.* ¶ 21.

According to Chapter 18, Section 7 (3) of the Companies Act, if an offeror has by means of a tender offer acquired more than 90% of the shares and votes subject to such tender offer, the tender offer price is presumed to be the "fair price" unless there are "special reasons" to deviate from the tender offer price. *Id.*; Statement of Defence §§ 4.1.4, 4.4.4. If such special reasons are

found to exist, the squeeze out price is determined in the squeeze-out arbitration. Ojantakanen Decl. ¶ 21; Statement of Defence § 4.4.4.

The main legal issues in the A-M Redemption Arbitration related to the interpretation and application of Chapter 18, Section 7 of the Companies Act. Ojantakanen Decl. ¶ 22. The issues to be decided by the tribunal were (i) whether the Offeror has acquired more than nine-tenths of the Company's shares; and (ii) whether any "special reasons" exist to justify deviating from the assumption that the deal price was fair to shareholders. *Id.*; *see* Statement of Defence § 4.4.4.

On February 11, 2021, the Offeror notified the Company that it intended to exercise its right of redemption and to initiate an arbitration proceeding pursuant to Chapter 18, Section 3 of the Companies Act. Ojantakanen Decl. ¶ 24. FourWorld had acquired shares in the Company in February 2020, and, through it and its affiliated funds and accounts, held a total of 5,377,769 shares of the Company, which corresponded to approximately 4.68% of the Company's issued and outstanding shares and voting power. *Id.* ¶¶ 11, 24.

On February 17, 2021, the Offeror commenced the A-M Redemption Arbitration. Award at 220; *see* Statement of Defence § 1.1.1. From the beginning, FourWorld was an active respondent in the proceeding, consistent with its role as an active minority shareholder in the Company. Ojantakanen Decl. ¶ 24; *see* Award at 4.

On April 23, 2021, as required, the Redemption Board of the Finland Chamber of Commerce appointed the arbitral tribunal charged with overseeing and deciding the A-M Redemption Arbitration. Award at 6; *see* Statement of Defence § 1.1.1.

In the A-M Redemption Arbitration, FourWorld retained two experts (Professor Vesa Puttonen and Juha Karttunen, the managing director of Sisu Partners Oy) regarding the valuation

of the fair price for the shares of the Company and argued that the shares should be valued at EUR 24.49. Award at 182-85; Ojantakanen Decl. ¶ 31; Statement of Defence § 1.3.1.

On June 3, 2021, FourWorld submitted its Statement of Defence setting forth its positions on the fair price of the Company's shares.[2] Among other things, FourWorld requested that the Offeror produce certain documents. However, the arbitral tribunal did not order all of the requested documents be produced. Ojantakanen Decl. ¶ 34. And in fact, although the arbitral tribunal can "deem it necessary that a party produce a document," the tribunal, as well as the Helsinki District Court, has no power to require a third party not subject to jurisdiction in Finland to produce such documents. *Id.* ¶¶ 52-53.

On November 3 and 4, 2021, the arbitral tribunal held oral hearings regarding the valuation of the shares of the Company. Award at 8. These proceedings included testimony from Halvor Meyer Horten, a Managing Director of Bain Europe, who testified regarding Bain's communications with the Company. *See* Ojantakanen Decl. ¶ 54; Award at 182. Despite this testimony, none of those communications were produced by the Company or the Offeror in the A-M Redemption Arbitration. Ojantakanen Decl. ¶ 54.

## VI.    The Award in the A-M Redemption Arbitration adopts many of FourWorld's arguments in support of a higher share price due to "special reasons."

On February 25, 2022, the arbitral tribunal rendered its decision, a copy of which is annexed as **Exhibit 4** (the "<u>Award</u>"), and an excerpted translated version of which is annexed as **Exhibit 5**, to the Ojantakanen Declaration. The tribunal decided that the redemption price payable by the Company for the 10,755,918 shares that were subject to the mandatory redemption shall be EUR 21.55 per share, an increase of EUR 3.71 per share. Award at 220, 229, 231-32.

---

[2] The Appendices to the Statement of Defence are not included with Exhibit 3 to the Ojantakanen Declaration.

As described more fully in the Award, the arbitral tribunal found that the market price of the Company's shares prior to the commencement of the A-M Redemption Arbitration did not arise in a free and independent exchange of shares and should not be relied upon. *Id.* at 206. Due to "special reasons," the redemption price provided for in the Tender Offer should be deviated from. *Id.* These "special reasons" included the exchange offer, which was directed at only a subset of the Company's shareholders, as well as the Extraordinary General Meeting scheduled to be held immediately after the Tender Offer Period. *Id.* at 201, 204 ("In view of the above, the Arbitration Court considers it clear that the execution of the Exchange Offer alongside the Tender Offer and the resulting division of the Offered Shareholders into two different groups, especially in terms of expectations and tax consequences for the Target Company's future performance and returns, constitute a special reason within the provision."), 206 ("[T]he Arbitral Tribunal finds that a number of parallel factors have been raised and substantiated in the case, which are justified to be considered as special reasons within the meaning of [Companies Act] 18:7.3 for disregarding the price presumption described in that provision.").

Further, the arbitral tribunal found that it was "clear" to "market participants, as well as to those who [may] have considered a possible competing bid, that the conditions for executing an exchange offer have been met, [and] that there are no conditions for a competing bid." *Id.* at 212. This meant that the "absence of competing takeover bids cannot . . . be considered as an indication that the market price under the Tender Offer would indicate the fair price of the share." *Id.*

In addition, the arbitral tribunal determined that the fair market price should be determined as of the commencement of the A-M Redemption Arbitration, instead of the date of the Tender Offer period's expiration, and could further incorporate information not available at that time. *Id.* at 209 ("The Arbitral Tribunal is therefore not bound in its discretion of deliberation to material

that has existed on 19 March 2021 or material that has been in the public domain and known to the market at that time."), 218.

## VII.    The parties file appeals from the Award to be heard by the Helsinki District Court.

On April 29, 2022, the Offeror filed an appeal from the Award with the District Court of Helsinki, pursuant to Chapter 18, Section 10 of the Companies Act, requesting that the District Court determine that the redemption price of the minority shares is the deal price of EUR 17.84 per share. Ojantakanen Decl. ¶ 38.[3] FourWorld also filed an appeal from the Award on April 29, 2022, pursuant to which it seeks to increase the redemption price to EUR 24.49 per share.

In this appeal to the District Court (*i.e.*, the A-M Redemption District Court Proceedings), additional evidence can be obtained and considered. *Id.* ¶ 44. In addition to live witness testimony, new documentary evidence or new deposition testimony will be eligible for admission and consideration. *Id.*

On June 20, 2022, the District Court of Helsinki held a preliminary hearing regarding the schedule for the appeal from the Award in the A-M Redemption Arbitration. Among other things, the following timetable was set: (i) by September 30, 2022, the Offeror and FourWorld shall submit their respective replies to each other's appeals; (ii) by November 3, 2022, the District Court shall decide on the parties requests for additional documents; (iii) a first official preparatory meeting shall be held on February 16, 2023 to discuss the status of the case and possible open issues in relation to the main proceeding; (iv) a second official preparatory meeting shall be held on March 15, 2023, which shall also serve as the "cut-off" date to introduce any new evidence for

---

[3] Due to dividends issued by the Company during the Tender Offer period, the offer price had fallen to EUR 17.84. *See* Kolb Decl. Ex. 3 (discussing first dividend of EUR 0.13); Kolb Decl. Ex. 6 (discussing second dividend).

use in the A-M Appeal Proceeding;[4] (v) the main proceeding shall commence on April 18, 2023;

and (vi) the District Court's award shall be provided by the end of June 2023. *Id.* ¶ 43.

## ARGUMENT

### I.        This Section 1782 application meets the statutory requirements.

Section 1782 authorizes this Court to order a company that is "found" in this district to

"produce a document or other thing for use in a proceeding in a foreign or international tribunal .

. . upon the application of any interested person . . ." 28 U.S.C. § 1782(a). Accordingly, to obtain

discovery under Section 1782, an applicant must satisfy three statutory requirements: (1) the

discovery must be directed at someone who resides or is found within the district of the district

court where the application is made; (2) the discovery must be for use in a foreign proceeding; and

(3) the applicant must be an "interested person." *In re Porsche Automobil Holding SE*, 985 F.3d

115, 120 (1st Cir. 2021); *In re Valitus, Ltd.*, 2020 WL 6395591, at *1 (D. Mass. Nov. 2, 2020); *In

re Application of Republic of Ecuador v. Douglas*, 153 F. Supp. 3d 484, 487 (D. Mass. 2015).

Petitioners' application satisfies these statutory requirements.

### A.        Respondent is found in this district.

The first requirement is satisfied because BCH resides in the District of Massachusetts.

BCH maintains its principal place of business in Boston. Kolb Decl. Ex. 7. BCH therefore resides

in this District for Section 1782 purposes, as a court of this District recently held in ordering BCH

to produce documents for use in a French proceeding in which Bain Europe and Bain UK were

defendants. *See In re Valitus*, 2020 WL 6395591, at *5 (finding that BCH "resides within the

District of Massachusetts for purposes of § 1782" on the basis of its Boston principal place of

business); *Sandra Holding Ltd. v. Al Saleh*, 2019 WL 3072197, at *2 (D. Mass. July 15, 2019)

---

[4] FourWorld is in the process of evaluating whether it should seek to identify new witnesses from
the Company that could be subpoenaed to testify at the Helsinki District Court.

(finding that a Section 1782 respondent that maintained its principal place of business in Boston resided in the District); *see also In re Tovmasyan*, 557 F. Supp. 3d 348, 354 (D.P.R. 2021) (finding that "Section 1782's 'resides or is found' language extends 'to the limits of personal jurisdiction consistent with due process'") (*quoting In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019)). In that case, *In re Valitus*, the court ordered production of documents that were largely if not exclusively located overseas in the possession of BCH's foreign affiliates. *In re Valitus,* 2020 WL 6395591, at *6, 8-9. That result accords with "the weight of the case law" supporting the application of Section 1782 to evidence located abroad, provided that the subpoena recipient has "possession, custody, *or control*" of such evidence, as required by the Federal Rules of Civil Procedure. *In re Application of Polygon Glob. Partners LLP*, 2021 WL 1894733, at *2-3 (D.R.I. May 11, 2021) (emphasis added) (citing *In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019), and *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194 (11th Cir. 2016)); *see also Minis v. Thomson*, 2014 WL 1599947, at *5 (D. Mass. Apr. 18, 2014) (noting § 1782's "accordance with the Federal Rules of Civil Procedure" in ordering respondents "found" in Massachusetts to produce "all that is under [their] possession, custody, or control," including "records potentially located in Tanzania . . . ."). A party has "control" over documents in the possession of another entity where it has the "legal right to obtain the documents requested upon demand." *In re Polygon*, 2021 WL 1894733, at *2 (quoting *Addamax Corp. v. Open Software Found., Inc.*, 148 F.R.D. 462, 464 (D. Mass. 1993); *see also Fernandes v. Bouley*, 2022 WL 2915702, at *5 (D. Mass. July 25, 2022) (explaining that "control" within the meaning of Rule 34 of the Federal Rules of Civil Procedure encompasses "the legal right, authority or ability to obtain documents on demand") (*quoting Mantha v. QuoteWizard.com, LLC*, 2021 WL 981815, at *3 (D. Mass. Mar. 16, 2021); *Rosie D. v. Romney*, 256 F. Supp. 2d 115, 119 (D. Mass. 2003) (equating Rule 34 "control" with "a legal right to obtain

documents"); *Haseotes v. Abacab Int'l Computers, Inc.*, 120 F.R.D. 12 (D. Mass. 1988) (same).
That relationship exists between Bain Europe and BCH, which is Bain Europe's "ultimate parent
undertaking and controlling party." Kolb Decl. Ex. 8.

**B.      The discovery sought is intended for use in a foreign proceeding.**

The discovery Petitioner seeks is for use in the A-M Redemption District Court Proceeding.
To meet the "for use" test, a Section 1782 applicant need not establish that the requested materials
would be discoverable or even admissible as evidence in the foreign jurisdiction. *Intel Corp. v.
Advanced Micro Devices, Inc.,* 542 U.S. 241, 253 (2004) ("We now hold that § 1782(a) does not
impose [a foreign discoverability] requirement."). Rather, it is sufficient for Petitioner to show that
the discovery requests are at least "marginally relevant" to the foreign proceeding. *In re Schlich*,
893 F.3d 40, 52 (1st Cir. 2018) (distinguishing such requests from "plainly irrelevant" requests
that "fail to meet the statutory 'for use' requirement"); *In re Polygon*, 2021 WL 1894733, at *3
(explaining that "[t]he bar is not high" for satisfying the "for use" test) (citation omitted); *see also
Sauren Fonds-Select SICAV v. For Discovery Pursuant to 25 U.S. § 1782*, 2016 WL 6304438, *3
(D.N.J. Oct. 26, 2016) ("Federal courts interpret the 'for use' phrase liberally, to include 'any
materials that can be made use of in the foreign proceeding to increase [the applicant's] chances
of success.'") (quoting *Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015)).

The discovery sought here is in fact highly relevant to the central issue of the A-M
Redemption District Court Proceeding. And, again, FourWorld can obtain, submit, and rely upon
new evidence in the A-M Redemption District Court Proceeding (unlike some appeals from
arbitral awards in other jurisdictions). Ojantakanen Decl. ¶ 44; *see, e.g.*, *In re Pilatus Bank PLC*,
2021 WL 1890752, at *8 (D.N.H. May 11, 2021) (finding that the petitioner had not satisfied §
1782's "for use" test by asserting that new evidence *could* be introduced on appeal without
showing *how* such evidence would be introduced); *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d

13

24, 29 (2d Cir. 1998) (reasoning that the requested discovery "certainly could not be 'for use in'" an appeal before a foreign tribunal that "does not take and hear new evidence"); *see also In re Stati*, 2018 WL 474999, at \*4 (D. Mass. Jan. 18, 2018) (interpreting *Euromepa* to mean that § 1782 discovery is improper where there is "nothing left to adjudicate" in a foreign tribunal).

Accordingly, the second statutory requirement is satisfied.

### C.    Petitioner is an interested person in the foreign proceeding.

Petitioner is an "interested person" under Section 1782 because it is a party to the A-M Redemption District Court Proceeding. Ojantakanen Decl. ¶ 39; *see Intel*, 542 U.S. at 256 ("No doubt litigants are included among . . . the interested persons who may invoke § 1782."); *In re Schlich*, 893 F.3d at 52 (finding the petitioner to be a party to the underlying foreign proceeding and "therefore" an interested person for § 1782 purposes); *In re Application of Republic of Ecuador*, 153 F. Supp. 3d at 487 ("[T]he Republic is an 'interested person' because it is the respondent in the Arbitration."); *Kulzer v. Esschem, Inc.*, 390 F. App'x 88, 91 (3d Cir. 2010) ("An interested person includes a party to the foreign litigation, whether directly or indirectly." (citation omitted)).

## II.    The discretionary *Intel* factors favor granting Petitioner's application.

Once the three statutory requirements of Section 1782 are satisfied, the Court must determine, in its discretion, whether to order the requested discovery. *In re Porsche*, 985 F.3d 115 at 120; *see Intel*, 542 U.S. at 264. In *Intel*, the Supreme Court identified four factors to consider: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding" so that the "foreign tribunal has jurisdiction over [it];" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court juridical assistance;" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of

14

a foreign country or the United States;" and (4) whether the requests are "unduly intrusive or burdensome" and, if so, whether those requests can be "trimmed." *Intel*, 542 U.S. at 264-65; *In re Valitus,* 2020 WL 6395591, at *5; *Sandra Holding*, 2019 WL 3072197, at *2, *5 n.5. No factor is given more weight than the others, and no one factor is dispositive. *See In re Schlich*, 893 F.3d at 50 (finding that the *Intel* factors "leav[e] it up to the district court to assign those factors weight based on the particular circumstances of each case"); *In re Polygon*, 2021 WL 1894733, at *2 ("While each discretionary factor 'bear[s] consideration[,]' no factor is dispositive.") (citing *Intel*, 542 U.S. at 264).

In addition to these suggested factors, the Court should also consider the overarching principles of Section 1782. "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247. Indeed, "a party to litigation in a foreign country can seek discovery relating to that litigation in a federal district court, and, in the discretion of that court, can obtain as *much discovery as it could* if the lawsuit had been brought in that court rather than abroad." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) (emphasis added) (internal citations omitted). As set forth below, Petitioner satisfies the *Intel* factors.

A.    **The discovery is sought from a non-party to the A-M Redemption District Court Proceeding.**

The first *Intel* factor looks at whether BCH is a participant in the A-M Redemption District Court Proceeding. In this regard, courts treat Section 1782 requests "permissively, especially where . . . the discovery is sought from a non-party to the foreign actions." *In re Appl. Pursuant to 28 U.S.C. § 1782*, 249 F.R.D. 96, 103 (S.D.N.Y. 2008). Indeed, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264;

15

*In re Porsche*, 985 F.3d 115 at 120-121 (treating the respondents' non-participant status as "a fact which weighs in favor of granting § 1782(a) discovery"); *In re Application of Republic of Ecuador v. Douglas*, 153 F. Supp. 3d at 488 (explaining that "there is less of a need for § 1782(a) aid" for foreign-proceeding participants); *Sauren Fonds-Select*, 2016 WL 6304438, at *5; *In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation Pour le Traitement du Mais*, 2013 WL 6164435, at *3 (E.D. Pa. Nov. 22, 2013) (quoting *Intel*, 542 U.S. at 264).

Respondent is not a party to the A-M Redemption District Court Proceeding, and Petitioner is otherwise unable to obtain the discovery sought in the application. Ojantakanen Decl. ¶¶ 27, 55. This factor weighs in favor of granting the application. *See In re Schlich*, 893 F.3d at 47-48; *In re Porsche*, 985 F.3d 115 at 120-121; *In re Chevron Corp.*, 633 F.3d 153, 162 (3d Cir. 2011); *Societe d'Etude*, 2013 WL 6164435, at *3.

**B.      Respondent has no reason to believe that Finnish courts are unreceptive to Section 1782 discovery.**

The second *Intel* factor involves whether the "nature, attitude and procedures" of the foreign tribunal indicate that it is receptive to Section 1782 assistance. *In re O'Keeffe*, 646 F. App'x 263, 266-67 (3d Cir. 2016); *see also Sandra Holding*, 2019 WL 3072197, at *2 (finding a foreign court "marginally more receptive than it is unreceptive to" § 1782 discovery upon considering such factors as the court's history of accepting § 1782 discovery into evidence, its membership in the Hague Evidence Convention, its general policies toward pre-suit discovery and depositions, the stringency of its pleading standards, and whether or not it had issued any direct statements on the subject). In assessing this factor, "[c]ourts 'have been instructed to tread lightly and heed only clear statements by foreign tribunals' that they would not welcome § 1782 assistance." *In re Porsche Automobil Holding SE*, 2019 WL 5806913, at *7 (D. Mass. Nov. 6, 2019), *adopted sub*

16

*nom. In re Porsche Automobil Holding SE*, 2020 WL 813710 (D. Mass. Feb. 19, 2020), *aff'd*, 985 F.3d 115 (1st Cir. 2021); *see also In re Tovmasyan*, 557 F. Supp. 3d at 357.

As set forth in the Ojantakanen Declaration, the determination of a fair redemption price under the Companies Act requires consideration of all relevant factors. Ojantakanen Decl. ¶ 50. Accordingly, Petitioner has a good faith basis to believe that the documentary evidence sought to be obtained under Section 1782 is relevant and that it will be able to use the evidence in the A-M Redemption District Court Proceeding. *See In re Application of Hill*, 2007 WL 1226141, at *3 (S.D.N.Y. Apr. 23, 2007). Furthermore, as set forth in the Ojantakanen Declaration, there is no reason to believe that Finnish courts will not be receptive to the use of Section 1782 applications to obtain discovery. *See* Ojantakanen Decl. ¶¶ 56-57.

Accordingly, this factor weighs in favor of granting the application.

### C. Petitioner is not circumventing foreign restrictions.

The third *Intel* factor considers whether the application is meant to "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264–65. This factor should not be construed as imposing a foreign-discoverability requirement, for *Intel* itself expressly held that "that § 1782(a) does not impose such a requirement." 542 U.S. at 253. Rather, the question "boils down to whether the discovery is being sought in bad faith." *In re Porsche*, 2019 WL 5806913, at *8; *see also In re Schlich*, 2016 WL 7209565, at *6 (D. Mass. Dec. 9, 2016), *aff'd*, 893 F.3d 40 (1st Cir. 2018) (finding that the third *Intel* factor favored a petitioner whose "request [was] not obviously frivolous" and who did not appear to be "seeking the discovery for improper means"); *Chevron Corp. v. Shefftz*, 754 F. Supp. 2d 254, 262 (D. Mass. 2010) (explaining that a § 1782 petitioner "need not seek the foreign court's blessing under [the third *Intel*] factor"). And there is no requirement in the First Circuit that an applicant must seek discovery in the foreign jurisdiction first. *See, e.g., In re Tovmasyan*, 557 F.

Supp. 3d at 358 (holding that "[c]ourts may grant § 1782 applications even where the applicant did not first seek discovery in the foreign tribunal"). Here, the requested discovery does not implicate any privilege or special protection that would make it improper under Finnish law, *see Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 153 (2d Cir. 2022), nor is Petitioner pursuing discovery from Respondent in bad faith, such that this factor weighs in favor of granting discovery.

**D.    The Subpoena is narrowly tailored.**

Finally, the Subpoena, including its document requests (the "Requests"), are narrowly tailored. The Requests, and the accompanying Rule 30(b)(6) deposition topics, are not unduly intrusive or burdensome under the Federal Rules of Civil Procedure. *See Sandra Holding*, 2019 WL 3072197, at *4 (observing that Section 1782 incorporates the Federal Rules of Civil Procedure, which in turn authorize discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering . . . whether the burden or expense of the proposed discovery outweighs its likely benefit") (quoting Fed. R. Civ. P. 26(b)(1)); *Minis v. Thomson*, 2014 WL 1599947, at *5 (D. Mass. Apr. 18, 2014) (noting § 1782's "accordance with the Federal Rules of Civil Procedure" in ordering "production of all that is under [the respondents'] possession, custody, or control," including "records potentially located in Tanzania" whose production the respondents argued would be overly burdensome).

The Requests are each narrowly tailored in time and scope to seek information relevant to the A-M Redemption District Court Proceeding. The Requests cover a three-year period beginning in September of 2019, reflecting the time when the negotiations between the Consortium and the Ahlstrom family began. The Requests (as well as the deposition topics) focus on negotiations with the Consortium and the Company regarding the terms of the Tender Offer, its valuation of the interests it sought to obtain via the Tender Offer, and its role in the Tender Offer's evolution

18

throughout the Tender Offer period. *See Minis v. Thomson*, 2014 WL 1599947, at \*5 (D. Mass. Apr. 18, 2014) (finding that the petitioners' requests were not unduly burdensome because all were "germane to the [foreign] claims"). The Requests also use a narrow time period that either the Award determined was relevant, or which reflect the period during which the Consortium began initial negotiations of the transaction resulting in the Tender Offer. *See In re Porsche*, 2019 WL 5806913, at \*10 (declining to further tailor the petitioner's document requests insofar as they targeted a "limited three-year period"); *Minis v. Thomson*, 2014 WL 1599947, at \*5 (D. Mass. Apr. 18, 2014) (crediting the petitioners' focus on "the relevant time frame" in finding that their document requests were not unduly burdensome).

In assessing the burden imposed by the Requests, it is appropriate for the Court to consider—as a court of this District did in *In re Valitus*—that "BCH is a sophisticated company with 'substantial experience in gathering and storing vast quantities of information . . . .'" *In re Valitus*, 2020 WL 6395591, at \*9 (D. Mass. Nov. 2, 2020) (citation omitted). Moreover, even if the Court believes any of the Requests is overly broad, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa*, 51 F.3d at 1101; *Sandra Holding*, 2019 WL 3072197, at \*5 n.5 ("It is well within the court's authority to issue a limited or modified discovery order" under Section 1782); *In re Porsche*, 2019 WL 5806913, at \*9 (ordering the parties to confer about narrowing the scope of proposed discovery). Accordingly, this last factor weighs in favor of granting the application, and Petitioner is entitled to the discovery sought from Respondent.

Further, the deposition testimony will not be duplicative of any testimony already obtained in the A-M Redemption Arbitration, or to be introduced in the A-M Redemption District Court

19

Proceeding. Although a witness from Bain Capital testified in the A-M Redemption Arbitration, he was not confronted with any underlying documents or communications that were the subject of the testimony, because those documents had not been produced in the arbitration.

## III.    *Ex parte* relief is appropriate.

This Court may grant Petitioner's application on an *ex parte* basis. *See, e.g.*, *In re Schlich*, 893 F.3d at 51 (observing "the fact that courts may adjudicate ex parte petitions under § 1782") (citing *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012); *In re Hornbeam Corp.*, 2018 WL 416486, at *2 (2d Cir. Jan. 16, 2018). As noted, serving a subpoena authorized under Section 1782 does not deprive Respondent of its ability to object to the subpoena, nor does this application "present complex issues that require the participation of [Respondent] to resolve." *In re Application of Masters for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, 315 F. Supp. 3d 269, 273 (D.D.C 2018).

## CONCLUSION

Accordingly, for the foregoing reasons, Petitioner respectfully requests that this Court grant the application for judicial assistance under Section 1782 and authorize it to obtain the requested discovery from Respondent.

Dated: August 29, 2022
      Boston, Massachusetts

**FISHER BROYLES, LLP**

By: */s/ Michael Gilleran*
     Michael Gilleran (Mass. BBO #192210)
     75 State Street, Suite 100, PMB 4418
     Boston, Massachusetts 02109
     Tel: 339.237.1384
     Email: michael.gilleran@fisherbroyles.com

     Gene M. Burd (D.C. Bar No. 1004330)
     1200 G Street NW, Suite 800
     Washington, D.C. 20005
     Tel: 202.750.0529
     Email: gene.burd@fisherbroyles.com
     (*pro hac vice* **forthcoming**)

     Tiffany N. Compres (Fl Bar. No. 78118)
     1221 Brickell Avenue, Suite 900
     Miami, Florida 33131
     Tel: (305) 342.2957
     Email: tiffany.compres@fisherbroyles.com
     (*pro hac vice* **forthcoming**)

**HERRICK, FEINSTEIN LLP**
Kyle J. Kolb (NY Bar No. 5014121)
(*pro hac vice* **forthcoming**)
Two Park Avenue
New York, New York
Tel: (212) 592-1400
Fax: (212) 592-1500
kkolb@herrick.com

*Attorneys for Petitioner FourWorld Event
Opportunities, L.P.*